UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOHNATHAN DeLAURA,

Defendant.[1]

Case No. 12-CR-812 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

In April 2013, Johnathan DeLaura ("DeLaura" or "Petitioner") pled guilty to distribution and possession of child pornography, transfer of obscene material, and the commission of a felony offense while registered as a sex offender. (*See* Information ¶¶ 1–4 (Dkt. No. 15); Dkt. (minute entries for Apr. 2, 2013).) One year later, this Court sentenced DeLaura to a prison term of 420 months, followed by 10 years of supervised release. (*See* Dkt. (minute entry for Apr. 1, 2014); Dkt. No. 35.) DeLaura has filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. (*See* Dkt. No. 62.) For the reasons that follow, the Court will hold an evidentiary hearing on January 26, 2021 in order to "determine the issues and make findings of fact and conclusions of law with respect" to DeLaura's Petition. *See* 28 U.S.C. § 2255(b).

I. Factual History

In a four-count Information filed November 7, 2012, the United States of America (the "Government") charged DeLaura with (i) distribution of child pornography, (ii) possession of

---

[1] The Clerk of Court is respectfully directed to open a related civil matter for the instant habeas Action. The caption should reflect that DeLaura is now a habeas Petitioner, not a Defendant.

child pornography, (iii) transfer of obscene material to a minor, and (iv) commission of a felony offense while registered as a sex offender. (Information ¶¶ 1–4.) Shortly before DeLaura's expected guilty plea, (*see* Dkt. (minute entry for Nov. 15, 2012); Dkt. Nos. 20, 22), the Government notified the Court that it had "received information—the nature of which [was] quite personal—which indicate[d] that" DeLaura's lawyer, Gary Greenwald ("Greenwald"), potentially suffered from a conflict of interest that triggered the Court's inquiry obligation under *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). (*See* Letter from Gov't to Court (Jan. 17, 2013) 1 (Dkt. No. 24).) Accordingly, the Court appointed Stephen R. Lewis ("Lewis") as independent *Curcio* counsel to advise DeLaura, (*see* Dkt. No. 27), and subsequently held a *Curcio* hearing on March 6, 2013 to address the putative conflict, (*see* Dkt. (minute entry for Mar. 6, 2013)).

At the *Curcio* hearing, the Government outlined the alleged conflict, explaining that it had "c[o]me into some information suggesting the existence of non-platonic interactions between Mr. Greenwald and [DeLaura's] mother." (Transcript of March 6, 2013 *Curcio* Hearing ("*Curcio* Tr.") 5:17–19 (Dkt. No. 63-1).)[2] These interactions, the Government noted, appeared to take place "against the backdrop of Mr. Greenwald's decision to forgive significant legal fees with respect to Mr. Delaura." (*Id.* at 6:8–12.) Together with Lewis and the Government, the Court explained to DeLaura the potential conflicts that could arise from this alleged relationship:

---

[2] The transcript of the March 6, 2013 *Curcio* hearing is located at pages A-45 to A-118 of Volume 1 of the Appendix filed with the United States Court of Appeals for the Second Circuit (No. 14-1204-CR), which counsel for Petitioner has attached as Exhibit 1 to his Declaration in Support of Petitioner's Motion. (*See* Decl. of Andrew Freifeld in Supp. of Pet'r's Mot. ("Freifeld Decl.") Ex. 1 ("App'x Vol. 1") (Dkt. Nos. 63, 63-1).) For clarity of reference, this Order cites directly to the *Curcio* transcript, which is only one part of Exhibit 1.

1) because the relationship ended, Greenwald might bear a grudge against Delaura or might want to spend as little time with him as possible;

2) given the ethical and personal problems with the relationship, Greenwald might have an interest in 'mak[ing] nice' to the government so that it would not report him to the disciplinary committee, or so that the relationship would not become public; and

3) that the fee arrangement could somehow have been based on the relationship, and that Greenwald might have an interest in ending the representation quickly once he was no longer being compensated.

*United States v. DeLaura*, 858 F.3d 738, 741 (2d Cir. 2017) (record citation omitted). The Court then "engaged Greenwald in an eyebrow-raising colloquy," *id.*, asking directly whether Greenwald would "deny[] that there [was] any non-platonic relationship[,]" (*Curcio* Tr. 15:16–17). As the Second Circuit Court of Appeals would later observe, Greenwald then:

> refused to answer several direct questions about any relationship with DeLaura's mother, said the questions made him angry, tried to mislead the [C]ourt as to whether he ever spent time with the mother (his non-denial is in the margin), and analogized himself to a character in a 2000 movie titled *The Contender*.

*DeLaura*, 858 F.3d at 741–42 (footnote omitted). "Greenwald's intransigence," the Court of Appeals noted, "put [this Court] in a difficult spot." *Id.* at 742. Despite the Court's efforts to undertake a probing factual inquiry, Greenwald's stonewalling "prevented the [C]ourt from ascertaining whether any type of conflict arose." *Id.* Accordingly, the Court instructed DeLaura to assume the "worst-case allegation was true, and then asked if he wished to agree to waive any hypothetical conflicts the assumed facts might create." *Id.* Cooperating "with this resourceful expedient," DeLaura agreed to waive the hypothetical conflicts. *Id.* The Court found that DeLaura was "fully aware of the possible conflicts of interest . . . ," that he had "unequivocally stated that he [was] waiving any right he might have to mak[e] any kind of ineffective assistance argument based on any of the conflicts that might result from the sexual relationship between his

3

lawyer and his mother," and that he had "said repeatedly and unequivocally that he want[ed] Mr. Greenwald to [continue to] represent him." (*Curcio* Tr. 69:16–25.)

Shortly after the *Curcio* hearing, DeLaura pled guilty to each of the four counts in the Information, (*see* Dkt. (minute entries for Apr. 2, 2013)), and subsequently was sentenced to a prison term of 420 months, followed by 10 years of supervised release, (*see* Dkt. (minute entry for Apr. 1, 2014); Dkt. No. 35). DeLaura (represented by new counsel) subsequently appealed the conviction, arguing that his waiver was invalid and that he received ineffective assistance of counsel due to Greenwald's conflict. *See DeLaura*, 858 F.3d at 740. Although the Court of Appeals affirmed the conviction and sentence, it pointed out that certain gaps in the record left key questions unanswered. *See id.* at 743. "We do not know," the court observed, "whether there was a sexual relationship (or its timing, duration, or terms), whether a conflict arose from it, whether that conflict was so severe as to be unwaivable, or whether DeLaura was harmed by it." *Id.* Noting that the Supreme Court "has expressed a preference for resolving ineffectiveness claims on collateral review," *id.* at 743–44 (citing *Massar v. United States*, 538 U.S. 500, 504 (2003)), the court decided to "affirm the conviction rather than remand the case to the district court," *DeLaura*, 858 F.3d at 744. Still, the court suggested that if "DeLaura's new attorney [were to] file[] a habeas petition," this Court would be well advised to hold an evidentiary hearing and give DeLaura's ineffectiveness claim "searching evaluation." *Id.*

DeLaura filed the instant Petition in March 2018. (*See* Dkt. No. 62.) Although the Petition raises a number of arguments that will be addressed separately, the Court is primarily concerned with two documents that were attached as exhibits to the Declaration of Petitioner's attorney, Andrew Freifeld, filed in support of the Petition. (*See* Freifeld Decl. Exs. 3, 4 (Dkt.

4

Nos. 63-3, 63-4).) Exhibit 3 to the Freifeld Declaration is the transcript of testimony given under oath by Petitioner's mother, Linda DeLaura ("Ms. DeLaura"), in an examination conducted by the New York State Grievance Committee for the Ninth Judicial District (the "Grievance Committee"), which is responsible for investigating allegations of attorney misconduct. (*See* Freifeld Decl. Ex. 3 ("DeLaura Exam. Tr.").) Exhibit 4 is the transcript of testimony given under oath by Greenwald in connection with the same investigation. (*See* Freifeld Decl. Ex. 4 ("Greenwald Exam. Tr.").) It appears that Ms. DeLaura filed a grievance against Greenwald in September 2014, (DeLaura Exam. Tr. 73:22–74:2), a few months after her son was sentenced. The Grievance Committee examined her on March 10, 2016, (*id.* at 1:12), and examined Greenwald, the respondent, on April 6, 2016, (Greenwald Exam Tr. 1:16–17).

Taken together, these transcripts begin to fill several factual gaps in this case. Most notably, Greenwald acknowledged carrying out a sexual relationship with Ms. DeLaura. (*See, e.g.*, *id.* at 47:9–12 ("I clearly did something wrong here . . . ."); *id.* at 57:6–8 ("I am not proud of what Gary Greenwald did personally, not proud at all."); *id.* at 58:17–19 ("I sure as hell have something to apologize for . . . , but not the defense of the case."); *id.* at 59:1–3 ("I know that I caused an embarrassment to the bar and I sure has [sic] hell caused embarrassment to me."); *id.* at 71:21–73:3 (conceding that he and Ms. DeLaura engaged in oral sex "two or three times").) Quite apart from Greenwald's concession, however, Ms. DeLaura's testimony raises troubling new questions about the nature of her relationship with Greenwald. According to Ms. DeLaura's testimony, Greenwald coerced her into a sexual relationship, explicitly threatening to advocate less aggressively for her son if she did not perform sexual favors as requested. (*See* DeLaura Exam. Tr. 12:16–13:10 (explaining that she "went along" with Greenwald's behavior in part

5

because he had "promised" that her son "would be looking at [a] five to 15[-year]" sentence, but that when she tried to decline his advances, Greenwald would say, "[w]ell, your son is going to get 35, 40 years[]"); *id.* at 13:11–15 (Q: "So, he held the sentencing over your head?" A: "All – always. Every single day, except in front of his partner, when his partner or Donna or anybody was in the room."); *id.* at 14:16–21 (A: "It was always like do it his way or your son's going to get 35 years." Q: "And the 'do it his way' was the sexual conduct?" A: "Yes."); *id.* at 21:25–22:14 (explaining that when she asked, in response to one of Greenwald's sexual advances, whether "[they] really ha[d] to go this route[,]" Greenwald responded, "35 or 15[]"); *id.* at 22:15–17 (Q: "So, he was implying to you that he could control the amount of time your son did?" A: "Yes.  Absolutely.").)  Greenwald vigorously and repeatedly denied these allegations at his examination.  (*See* Greenwald Exam Tr. 100:3–7 ("So this is nonsense that she would have any fear because we're doing the work, okay. . . .  There was no quid quo [sic]."); *id.* at 102:19–21 ("There was no quid quo pro [sic].  There were never any threats like that."); *id.* at 103:9–11 ("The only thing I did from the time I stopped [sic], I did everything in my power to make sure that we did the best job for this man."); *id.* at 109:22–110:3 ("[Y]ou're asking me questions essentially alluding to, that you did this a multitude of times, you did it because you were threatening her, she was coerced to do it and she therefore did it.  But the facts totally 100 percent negates [sic] the argument."); *id.* at 114:6–20 ("I never, never, never, never, never, I cannot say it better, never [said] 5 to 15 years. . . .  I never said that.  There was never a quid pro quo."); *id.* at 134:17–19 ("There is no issue about oral sex, but it wasn't a condition of doing this or doing that . . . .").)

6

II.  Discussion

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).  If credited, Ms. DeLaura's allegations against Greenwald raise serious questions about his representation of Petitioner, and potentially call into question whether Greenwald's conflict was waivable.  Although the Court's ability to probe these issues is complicated considerably by the fact that Greenwald passed away in July 2016, (*see* Freifeld Decl. ¶ 4), the Court believes it is nevertheless obligated to question those witnesses who are available to testify.

Accordingly, the Court will hold an evidentiary hearing on January 26, 2021 at 10:00 a.m.  The following individuals should be present and prepared to give testimony:

- Linda DeLaura
- Johnathan DeLaura
- Jeremy Kaufman

If the Parties wish to call any additional witnesses, they should notify the Court no later than Friday, January 8, 2021.  After conducting its own examination of each witness, the Court will allow the Government and counsel for Petitioner to examine and/or cross-examine each witness itself.

7

SO ORDERED.

DATED: December 16, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE