UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHNATHAN DELAURA,<br><br>                  Defendant. | No. 12-CR-812 (KMK)<br><br>OPINION & ORDER |

Appearances:

Marcia Sue Cohen, Esq.
United States Attorney's Office for the Southern District of New York
White Plains, NY
*Counsel for the United States of America*

Andrew H. Freifeld, Esq.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Defendant Jonathan DeLaura ("Defendant" or "DeLaura") has filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence (the "Petition"). (*See* Pet. (Dkt. No. 62).) Defendant has also filed a Motion to recuse the Court from presiding over further proceedings in this Action and to recuse Assistant United States Attorney ("AUSA") Marcia Cohen, Esq. ("Cohen" or "AUSA Cohen") from participating in this Action (the "Motion to Recuse"). (*See* Mot. to Recuse (Dkt. No. 107).) For the reasons discussed below, the Court grants Defendant's Petition as unopposed and denies Defendant's Motion to Recuse.

I. Background

      On November 7, 2011, Defendant was charged with the following: (i) one count of Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1); (ii) one

count of Possession of Child Pornography, in violation of 18 §§ U.S.C. 2252A(a)(5)(B) and (b)(2); (iii) one count of Transfer of Obscene Material to a Minor, in violation of 18 U.S.C. § 1470; and (iv) one count of Commission of a Felony Offense While Registered as a Sex Offender, in violation of 18 U.S.C. § 2260A. (*See generally* Information (Dkt. No. 15).)

On January 17, 2013, the Government wrote in a letter to the Court that it "received information—the nature of which is quite personal—which indicates that [Defendant's counsel, Gary Greenwald ("Greenwald")]'s continued involvement as counsel for Mr. DeLaura in the above-referenced case may well present a conflict of interest." (*See* Letter from Marcia S. Cohen, Esq. to Court (Jan. 17, 2013) ("Cohen Letter (Jan. 17, 2013)") (Dkt. No. 24).) Specifically, the Government learned that Greenwald had engaged in a sexual relationship with Defendant's mother and consequently forgave at least some of the legal fees accrued from representing Defendant in this Action. (*See* Hearing Tr. (Mar. 16, 2022) 37 (Dkt. No. 135).) The Government therefore requested that the Court appoint independent counsel for Defendant and hold a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) ("*Curcio* hearing"). (*See* Cohen Letter (Jan. 17, 2013)).[1] On February 22, 2013, the Court appointed

---

[1] At a *Curcio* hearing, the district court inquires as to "whether the defendant will knowingly and intelligently waive his right to conflict-free representation." *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019). Specifically, the court:

> (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them. . . . The ultimate goal of these procedures is to permit the court to determine whether the defendant's waiver of his right to conflict-free counsel is knowing and intelligent.

Stephen Lewis, Esq. ("Lewis") as independent counsel to advise Defendant regarding the potential conflict with Greenwald's representation. (*See* Order (Feb. 22, 2013) (Dkt. No. 27); *see also* (*See* Dkt. (minute entry for Mar. 6, 2013).)

On March 6, 2013, the Court held a *Curcio* hearing. (*See* Dkt. (minute entry for Mar. 6, 2013).) At the *Curcio* hearing, the Government outlined the alleged conflict, explaining that it had "c[o]me into some information suggesting the existence of non-platonic interactions between Mr. Greenwald and [DeLaura's] mother." (*Curcio* Hearing Tr. 5 (Dkt. No. 63-1).)[2] These interactions, the Government noted, appeared to take place "against the backdrop of Mr. Greenwald's decision to forgive significant legal fees with respect to Mr. Delaura." (*Id.* at 6.) The Court explained to DeLaura the potential conflicts that could arise from this alleged relationship:

1) because the relationship ended, Greenwald might bear a grudge against DeLaura or might want to spend as little time with him as possible;

2) given the ethical and personal problems with the relationship, Greenwald might have an interest in 'mak[ing] nice' to the government so that it would not report him to the disciplinary committee, or so that the relationship would not become public; and

3) that the fee arrangement could somehow have been based on the relationship, and that Greenwald might have an interest in ending the representation quickly once he was no longer being compensated.

---

*United States v. Perez*, 325 F.3d 115, 119 (2d Cir. 2003) (citations omitted). The Second Circuit has stated that the goal of a *Curcio* hearing is to determine whether the "defendant appreciated his predicament and made a properly informed choice." *Arrington*, 941 F.3d at 40.

[2] The transcript of the March 6, 2013 *Curcio* hearing is located at pages A-45 to A-118 of Volume 1 of the Appendix filed with the United States Court of Appeals for the Second Circuit (No. 14-1204-CR), which counsel for Defendant has attached as Exhibit 1 to his Declaration in Support of Defendant's Petition. (*See* Decl. of Andrew H. Freifeld in Supp. of Habeas Pet. ("Freifeld Decl.") Ex. 1 (Dkt. No. 63-1).) For clarity of reference, the Court cites directly to the *Curcio* transcript, which is only one part of Exhibit 1, and refers to the page numbers in the transcript itself.

3

*United States v. DeLaura*, 858 F.3d 738, 741 (2d Cir. 2017) (record citation omitted). The Court then "engaged Greenwald in an eyebrow-raising colloquy," *id.*, asking directly whether Greenwald would "deny[] that there [was] any non-platonic relationship[,]" (*Curcio* Hearing Tr. 15). As the Second Circuit would later observe, Greenwald then:

> refused to answer several direct questions about any relationship with DeLaura's mother, said the questions made him angry, tried to mislead the [C]ourt as to whether he ever spent time with the mother (his non-denial is in the margin), and analogized himself to a character in a 2000 movie titled *The Contender*.

*DeLaura*, 858 F.3d at 741–42 (footnote omitted). "Greenwald's intransigence," the Second Circuit noted, "put [this Court] in a difficult spot." *Id.* at 742. Despite the Court's efforts to undertake a probing factual inquiry, Greenwald's stonewalling "prevented the [C]ourt from ascertaining whether any type of conflict arose." *Id.* Accordingly, the Court instructed DeLaura to assume the "worst-case allegation was true, and then asked if he wished to agree to waive any hypothetical conflicts the assumed facts might create." *Id.* Cooperating "with this resourceful expedient," DeLaura agreed to waive the hypothetical conflicts. *Id.* The Court found that DeLaura was "fully aware of the possible conflicts of interest . . . ," that he had "unequivocally stated that he [was] waiving any right he might have to mak[e] any kind of ineffective assistance argument based on any of the conflicts that might result from the sexual relationship between his lawyer and his mother," and that he had "said repeatedly and unequivocally that he want[ed] Mr. Greenwald to [continue to] represent him." (*Curcio* Hearing Tr. 69.)

Shortly after the *Curcio* hearing, on April 2, 2013, Defendant pled guilty to all four Counts, pursuant to a plea agreement with the Government. (*See* Dkt. (minute entry for Apr. 2, 2013); *see generally* Information.) On April 1, 2014, Defendant was sentenced to 150 months' imprisonment in connection with Count One, 30 months' imprisonment in connection with Count Two, 120 months' imprisonment in connection with Count Three, and 120 months'

4

imprisonment in connection with Count Four, with all Counts to run consecutively for a total term of 420 months. (*See* Dkt. (minute entry for Apr. 1, 2014). On April 9, 2014, Judgment was entered against Defendant to that effect. (*See generally* Judg. (Dkt. No. 35).)

On April 14, 2014, Defendant filed a Notice of Appeal challenging the Judgment. (*See* Not. of Appeal (Dkt. No. 36.) On April 15, 2014, Defendant moved to proceed *in forma pauperis* ("IFP") on appeal. (Dkt. No. 37.) The Court granted that request. (Dkt. No. 39.) On June 15, 2017, the Second Circuit affirmed the Judgment. *DeLaura*, 858 F.3d at 744. However, the Second Circuit pointed out that certain gaps in the record left key questions unanswered. *See id.* at 743. "We do not know," the Second Circuit observed, "whether there was a sexual relationship (or its timing, duration, or terms), whether a conflict arose from it, whether that conflict was so severe as to be unwaivable, or whether DeLaura was harmed by it." *Id.* Noting that the Supreme Court "has expressed a preference for resolving ineffectiveness claims on collateral review," *id.* at 743–44 (citing *Massar v. United States*, 538 U.S. 500, 504 (2003)), the Second Circuit decided to "affirm the conviction rather than remand the case to the district court," *id.* at 744. Still, the Second Circuit suggested that if "DeLaura's new attorney [were to] file[] a habeas petition," this Court would be well advised to hold an evidentiary hearing and give DeLaura's ineffectiveness claim "searching evaluation." *Id.*

On August 4, 2017, Andrew Freifeld, Esq. ("Freifeld"), the attorney that the Second Circuit appointed to represent Defendant in his appeal of the Judgment, wrote a letter asking this Court to appoint him pursuant to the Criminal Justice Act as Defendant's counsel for purposes of filing a habeas petition. (Dkt. No. 43.) The Court granted that request. (*See id.*)

5

II.  Discussion

A.  Habeas Petition

On March 1, 2018, Defendant filed his Petition and accompanying papers, in which he requests that Defendant's guilty plea, conviction, and sentence should be vacated.  (*See* Pet.; Freifeld Decl. (Dkt. No. 63).)  Defendant's Petition rests on the argument that Greenwald had an actual conflict that was unwaivable, and thus, Greenwald provided ineffective assistance of counsel.  (*See generally id.*)  The Court has previously noted on the record that, incredibly, Freifeld filed the instant Petition without explaining to his client the consequences of the Petition being granted.  (*See* Hearing Tr. (Mar. 5, 2018) 57–58 (Dkt. No. 71).)  Even more incredibly, Freifeld had not even met with Defendant prior to filing the Petition.  (*See id.* ("You know what, that's really troubling that a lawyer is bringing a claim of ineffective assistance on behalf of a client he hasn't met with to go over the ineffective assistance claim.").)  The Government initially opposed the Petition, and it filed an Opposition on April 26, 2018.  (Gov't's Mem. of Law in Opp'n to Def.'s Habeas Pet. (Dkt. No. 72).)  Defendant filed a Reply dated May 14, 2018.  (Def.'s Reply Mem. of Law in Supp. of Habeas Pet. (Dkt. No. 76).)

On February 18, 2021, the Government wrote a letter informing the Court that the Government no longer opposed the Petition and "will not object" to the Court granting it.  (*See* Letter from Marcia S. Cohen, Esq. to Court (Feb. 18, 2021) ("Cohen Letter (Feb. 18, 2021)") 1 (Dkt. No. 93).)  The Government stated:

> Although the Government believes that there are grounds on which we could continue to oppose the motion, under the unique circumstances presented here and in an effort to move expeditiously toward a final disposition, we think the interests of justice would be better served by consenting to it, as long as DeLaura explicitly acknowledges his understanding of the risks and potential consequences associated with the withdrawal of his plea.

6

(*Id.*) The Government explained that there was a mistake in the Plea Agreement, such that the stipulated Guidelines in the Plea Agreement were actually *lower* than they should have been if they were calculated correctly. (*See id.* at 1–2.) That is, the Plea Agreement stipulated that the Guidelines range was 292 to 365 months plus a mandatory term of 120 months' imprisonment to run consecutive to any sentence imposed on Count Three. (*See id.* at 2.) However, according to the Government, because the Plea Agreement misstated the offense level for Count Three, the correct Guideline range was actually 360 to 480 months plus a mandatory minimum term of 120 months' imprisonment to run consecutive to any sentence imposed on Count Three. (*Id.*)[3] The Government clarified the consequences of the Court granting the Petition:

> If DeLaura's plea is vacated, he could either (1) plead pursuant to a new plea agreement (which would contain correctly-calculated Guidelines); (2) plead "open" to the Information (i.e., without a plea agreement in place), or (3) proceed to trial. If DeLaura chooses option (2) or (3), there would be the possibility of additional charges carrying greater penalties (and greater mandatory minimums). The charges in the Information were the result of a negotiated disposition; the Government agreed to forego charges pursuant to [18 U.S.C.] § 2251(a)(sexual exploitation) and § 2422(b) (enticement) and agreed to bring a § 2260A charge predicated on § 1470 rather than § 2251(a) or § 2422(b).

(*Id.* at 2.)

---

[3] According to the Government, the offense level for Count Three (which constituted Group Two) was 19, when, in fact, "it should have been 40 because of the applicable cross-reference in U.S.S.G. § 2G3.1 (which directs the application of U.S.S.G. § 2G2.2 where applicable)." (*Id.* at 2 n.1.) As the Government explained,

> When calculated correctly, the offense level for Group Two (40) is within one to four levels of the offense level for the group with the highest offense level (Group One with an offense level of 42) and, accordingly, pursuant to U.S.S.G. § 3D1.4, two units and two levels must be added to 42, thus raising the offense level from 42 to 44. After a three-level reduction for acceptance of responsibility, the offense level is 41. An offense level of 41 and a Criminal History Category of II (and above) results in a Guidelines range of 360 months to life imprisonment. Here, the maximum statutory penalty for Counts One, Two and Three is 40 years.

(*Id.*)

7

On May 26, 2021, the Court held a hearing in which it advised Defendant regarding the potential outcomes of his Petition. (*See* Dkt. (minute entry (May 26, 2021); *see also* Hearing Tr. (May 26, 2021) (Dkt. No. 130).) The Court determined during the conference that it would appoint an independent counsel to advise Defendant as to the same issue. (*See generally id.*) Accordingly, on June 4, 2021, the Court appointed Margaret Shalley, Esq. ("Shalley") to represent Defendant for that purpose. (*See* Order (June 4, 2021) (Dkt. No. 104).)

On March 16, 2022, the Court held another hearing after Shalley had time to review the case materials and meet with Defendant. (*See* Dkt. (minute entry for Mar. 16, 2022).) The Court found:

> Ms. Shalley has represented that she's gone through the discovery, she's met with Mr. DeLaura five or six times, Mr. DeLaura was actually shaking his head during all that at the time yes and then he's confirmed he's had enough time to talk to Ms. Shalley, so I think that—given that, I think the record is clear that Mr. DeLaura has had enough time to not only speak to Mr. Freifeld about this, but also to Ms. Shalley who has, not surprisingly, taken the time to familiarize herself with the discovery in this case, has had conversations with you, Ms. Cohen, has had many conversations with Mr. DeLaura, and so I have no doubt that the advice she's given has been the result of her own due diligence, both in terms of researching the law on this and going through the discovery and the facts.

(Hearing Tr. (Mar. 16, 2022) 33.) The Court therefore determined that, given that DeLaura had demonstrated his full understanding of the issues, including the potentially adverse consequences to DeLaura, the Court would go forward with deciding the Petition. (*See id.* at 34; *see generally id.*)

Having held two separate hearings in which the Court ensured that Defendant was aware of the potential consequences if the Court grants his Petition, and having appointed an independent counsel to advise Defendant on the same issue, the Court is satisfied that Defendant is fully cognizant of the potential consequences to him if the Petition was granted. Therefore, the Court grants Defendant's Petition as unopposed. *See Anselmo v. Hardin*, 253 F.2d 165, 170 (3d

8

Cir. 1958) (noting that the district court judge entered an order granting the petitioner's writ of habeas corpus where the government had "no objection to the entry of the order"); *United States v. Darby*, No. 16-CR-36, 2017 WL 1135612, at *1 (E.D. Va. Mar. 27, 2017), *aff'd*, 721 F. App'x 304 (4th Cir. 2018) (noting that the Fourth Circuit granted the government's unopposed motion to vacate the defendant's guilty plea); *Rhoden v. Sabol*, No. 16-CV-2305, 2017 WL 63013, at *2 (M.D. Pa. Jan. 5, 2017) ("The [c]ourt will grant the unopposed petition for writ of habeas corpus. . . ."); *Eligwe v. Lynch*, No. 16-CV-2083, 2016 WL 7034633, at *2 (M.D. Pa. Dec. 2, 2016) (same); *Haughey v. Gonyea*, No. 13-CV-8768, Judg. (Dkt. No. 97) (S.D.N.Y. May 23, 2016) (granting unopposed habeas petition); *Phillips v. Holinka*, No. 10-CV-439, 2012 WL 1516605, at *1 (W.D. Wis. Apr. 26, 2012) (same); *Rozplochi v. Love*, No. 90- CV-6201, 1991 WL 40351, at *1 (E.D. Pa. Mar. 19, 1991) (noting that if the government did not oppose the petitioner's habeas petition, the court would grant it as unopposed).

Having granted Defendant's Petition, Defendant's guilty plea and sentence are therefore vacated.

B. Motion to Recuse

On July 7, 2021, Defendant filed a Motion to Recuse both this Court and AUSA Cohen from this Action. (*See* Mot. to Recuse.) On July 29, 2021, the Government filed an Opposition. (Letter from Marcia S. Cohen, Esq. to Court (Jul. 29, 2021) ("Govt's Recusal Opp'n") (Dkt. No. 109).) The Court will address each of Defendant's argument as necessary to resolve the Motion to Recuse.

1. Motion to Recuse the Court

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be

9

questioned." 28 U.S.C. § 455(a). "In determining whether Section 455(a) requires recusal, the appropriate standard is objective reasonableness—whether an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." *United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (quotation marks and alterations omitted); *see also S.E.C. v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013) ("The standard for disqualification under 28 U.S.C. § 455(a) is an objective one[;] . . . the question is whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality." (quotations and citations omitted)). "The decision whether to grant or deny a recusal motion . . . is a matter confided to the district court's discretion. . . ." *United States v. Lewis*, No. 14-CR-0523, --- F. Supp. 3d ---, 2022 WL 2954084, at *2 (E.D.N.Y. July 26, 2022) (quoting *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987) (first alteration in original).

"The Supreme Court has made clear that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" *Harrison v. Cnty. of Nassau*, No. 15-CV-2712, 2018 WL 4583491, at *1 (E.D.N.Y. Sept. 24, 2018), *aff'd*, 804 F. App'x 24 (2d Cir. 2020) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *see also Gallop v. Cheney*, 645 F.3d 519, 520-21 (2d Cir. 2011) ("Prior rulings are, ordinarily, not a basis for disqualification . . . . [A]bsent a deep-seated favoritism or antagonism that would make fair judgment impossible, rulings are almost invariably [] proper grounds for appeal, not for recusal." (quotations, alterations and citations omitted)); *Sheet Metal Workers' Nat'l Pension Fund v. Amodeo*, No. 09-CV-121, 2016 WL 3080807, at *10 (E.D.N.Y. May 27, 2016) (same). "Judicial rulings can 'only in the rarest of circumstances evidence' the requisite degree of favoritism." *Harrison*, 2018 WL 4583491, at *1 (quoting *Liteky*, 510 U.S. at 551). Further, "recusal is not warranted

10

where the only challenged conduct consists of . . . routine trial administration efforts, and ordinary admonishments [] to counsel and to witnesses, where the conduct occurs during judicial proceedings, and where the judge neither (1) relies upon knowledge acquired outside such proceedings nor (2) displays deep-seated and unequivocal antagonism that would render fair judgment impossible." *Razmilovic*, 738 F.3d at 29–30 (alterations, quotations and citations omitted).

In support of the Motion to Recuse, Defendant's counsel makes a series of unsubstantiated arguments that are in fact contradicted by the record. First, Defendant's counsel argues that the Court should recuse itself because it falsely informed Defendant at his plea allocution that he was facing a maximum sentence of 40 years, when the maximum sentence was in fact 50 years. (*See* Mot. to Recuse 14–15.) This assertion is patently incorrect. During the plea allocution, the Court stated: "If convicted of all four counts, the maximum term of imprisonment you face is 40 years; do you understand that?" (Plea Hearing Tr. 26.)[4] Defendant responded, "Yes." (*Id.*) However, the inquiry did not end there. The Court went on, "With a mandatory minimum term of imprisonment of ten years, which has to run consecutive to any sentence that's imposed for Count Three; do you understand that?" (*Id.* at 27.) Defendant again responded, "Yes." (*Id.*) The record therefore belies Defendant's argument, and it shows that the Court in fact informed Defendant that he was facing a maximum sentence of 40 years, to be followed consecutively by a mandatory minimum of ten years—resulting in a total of 50 years.

---

[4] The transcript of the April 2 2013 guilty plea proceeding is located at pages A-128 to A-194 of Volume 2 of the Appendix filed with the United States Court of Appeals for the Second Circuit (No. 14-1204-CR), which counsel for Defendant has attached as Exhibit 2 to his Declaration in Support of Petitioner's Motion. (*See* Freifeld Decl. Ex. 2 (Dkt. No. 63-2).) For clarity of reference, the Court cites directly to the plea hearing transcript, which is only one part of Exhibit 2, and refers to the page numbers in the transcript itself.

Second, Defendant argues that the Court should recuse itself because it has allegedly participated in the Parties' plea negotiations. (*See* Mot. to Recuse 15–16.) This, too, is false. As the Government correctly points out, (*see* Gov't's Recusal Opp'n 5 n.3), it was actually Freifeld who attempted to elicit a promise from the Court as to the new sentence it would give Defendant if his prior sentence was vacated—an invitation which the Court squarely declined. During the hearing on April 26, 2021, the Court engaged in the following colloquy with Freifeld:

> MR. FREIFELD: Well, I could tell you for—I plan to ask you for a promise that no matter what [Defendant] does, 35 years is the maximum that the Court—
>
> THE COURT: On what basis would I—first of all, I can't make that promise. It's totally improper for a court to promise a defendant what sentence the defendant will receive if he or she pleads guilty, doesn't plead guilty. That's actually improper, and I'm kind of really shocked you would ask a court to do that.

(Hearing Tr. (May 26, 2021) 34.) Thus, contrary to Defendant's assertion, the Court has rejected Freifeld's attempts to negotiate Defendant's sentence with the Court.

Further, Defendant counsel appears to argue that, by conducting thorough allocutions with Defendant both before his guilty plea and after the Petition was filed, that the Court was somehow participating in plea discussions with Defendant. (*See* Mot. to Recuse 16–23.) District judges are entitled to—and in fact are expected to—ask criminal defendants questions to ensure that they understand fully the consequences of their decisions. Indeed, the Second Circuit has long applied this principle in the context of determining whether a defendant intelligently and voluntarily entered into a plea agreement. *See, e.g.*, *United States v. Yang Chia Tien*, 720 F.3d 464, 470 (2d Cir. 2013) (vacating a defendant's guilty plea where the district court judge should have made "further inquiry" into how the defendant's medications impacted his ability to knowingly enter into a plea agreement); *Korenfeld v. United States*, 451 F.2d 770, 773 (2d Cir. 1971) (noting that Federal Rule of Criminal Procedure 11 requires "that a judge *personally*

12

ascertain" that a defendant "had made the plea voluntarily with understanding of the nature of the charge and the consequences of the plea" (emphasis added) (quotation marks omitted)); *see also Chang v. United States*, 305 F. Supp. 2d 198, 203 (E.D.N.Y. 2004) (noting that the district court's allocution was appropriate where "the court repeatedly inquired whether [the] petitioner understood the charges and elicited an explanation of [the] petitioner's conduct from [the] petitioner in his own words"). The same principle applies to the multiple allocutions the Court conducted to ensure that Defendant understood the consequences of his Petition, which, as discussed above, are as follows:

> If DeLaura's plea is vacated, he could either (1) plead pursuant to a new plea agreement (which would contain correctly-calculated [and thus higher] Guidelines); (2) plead "open" to the Information (i.e., without a plea agreement in place), or (3) proceed to trial. If DeLaura chooses option (2) or (3), there would be the possibility of additional charges carrying greater penalties (and greater mandatory minimums). The charges in the Information were the result of a negotiated disposition; the Government agreed to forego charges pursuant to [18 U.S.C.] § 2251(a)(sexual exploitation) and § 2422(b) (enticement) and agreed to bring a § 2260A charge predicated on § 1470 rather than § 2251(a) or § 2422(b).

(Cohen Letter (Feb. 18, 2021) 2.) Moreover, the Court determined it was even more imperative that it discuss the consequences of granting the Petition when it learned that Freifeld had filed it prior to ever consulting Defendant. (*See* Hearing Tr. (Mar. 5, 2018) 57–58.)

Third, Defendant argues that the Court's "ceaseless, unfounded, upbraiding" of Freifeld demonstrates the Court's bias against Freifeld. (Mot. to Recuse 23.) That the Court has admonished Freifeld during courtroom exchanges simply does not merit the Court's recusal. "The Second Circuit has held that a district judge's 'sharp colloquy' with defense counsel did not demonstrate a bias toward defendant." *Alicea v. Astrue*, No. 07-CV-2676, 2008 WL 2139151, at *3 (S.D.N.Y. May 19, 2008) (citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1316 (2d Cir. 1988)); *see also Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir.

13

2009) (noting that the district judge's "criticisms of the [attorney's] filing were neither unfounded nor so extreme that they suggest that [the judge] was biased against [the attorney]"); *In re Drexel*, 861 F.2d at 1316 ("The sharpness in colloquy between the judge and counsel, quoted by petitioners, does not demonstrate bias, but is well within the acceptable boundaries of courtroom exchange. . . . Further, the remarks made by [the judge] challenged by petitioners were made in the context of judicial conferences and hearings and were directly addressed to the conduct of the attorneys before him; they did not extend to extrajudicial matters beyond that conduct. We see no reason for disqualification in these exchanges."); *In re Int'l Bus. Machs. Corp.*, 618 F.2d 923, 932 (2d Cir. 1980) ("We have examined the record and are persuaded that while occasional flareups toward counsel have undoubtedly occurred, there is no indication that this is other than sporadic. Such isolated instances are undoubtedly endemic to a trial of this dimension, and do not provide any basis for finding personal prejudice against [the petitioner], as distinct from its counsel."); *United States v. Nix*, No. 14-CR-06181, 2017 WL 2537348, at *7 (W.D.N.Y. June 9, 2017) ("[T]he Second Circuit [has] rejected the contention that sharp exchanges between judge and counsel, based on the judge's view that counsel had engaged in misconduct, demonstrated bias."); *St. Clair v. Cadles of Grassy Meadows II, L.L.C.*, 550 B.R. 655, 667 (E.D.N.Y. 2016) (finding that the judge's critical comments of the appellants and their counsel "were entirely reasonable," "well within the acceptable boundaries of courtroom exchanges," and not indicative of judicial bias).[5] That is all that has happened in this case. The

---

[5] To the extent that Defendant argues that this Court has exhibited bias toward the Government, that argument is wholly unsupported by any facts and therefore rejected. *See e.g.*, *Rosa v. United States*, No. 07-CR-443, 2014 WL 12814478, at *2 (N.D.N.Y. Mar. 7, 2014) ("This [c]ourt finds that the affidavits presented by [the defendant] are not sufficient proof that this [c]ourt has a personal bias in favor of or against a party herein.").

14

Court noted that it was surprised to learn that Friefeld filed this habeas petition without first consulting with DeLaura and advising him of the potentially *adverse* consequences to DeLaura, and that it thought it inappropriate for Friefeld to ask the Court to promise a particular sentence should DeLaura plead guilty. The Court stands by its reaction to these decisions by Friefeld, which in the Court's view were not made with DeLaura's best interests in mind. Indeed, every action this Court has taken has been to ensure that DeLaura was fully aware of the potential consequences of the habeas petition. That is why, for example, the Court appoint Ms. Shalley to provide independent advice to DeLaura. There is nothing about these actions that exhibits bias, let alone bias that justifies the extreme remedy of recusal.

In sum, the Court finds no basis on which to recuse itself, and that portion of Defendant's Motion to Recuse is therefore denied.

### 2. Motion to Recuse AUSA Cohen

Defendant's Motion to Recuse AUSA Cohen similarly lacks merit. The central argument that Defendant's counsel makes in favor of the Motion appears to be as follows:

> [T]his case wouldn't be in its current thicket, nearly ten years passed, if AUSA Cohen at the *Curcio* hearing had simply disclosed to the Court facts about the affair as she understood them. As this Court stated then: "[i]t is very problematic" where "the Government comes into information that suggests a potential conflict and sits on it." By only telling the Court just half the tale, that's exactly what the [G]overnment did.

(Mot. to Recuse 27–28.) However, Friefeld again misstates the record, and by doing so, *he* tells the Court just half the tale—not the Government. In fact, Friefeld takes the what the Court said to the Government at the *Curcio* entirely out of context:

> [I]t's very clear to me that [AUSA Cohen] ha[s] been trying very hard to be discreet and to tread carefully, but [the Government] ha[s] an obligation. I mean, if you— if the Government comes into information that suggests a potential conflict and sits on it, then that is very problematic both in terms of how the criminal justice system

15

works here, but also I think there's your—you have your own ethical issues, and I think you have balanced them, from where I sit, ably and appropriately.

(*Curcio* Hearing Tr. 21.) Rather than admonishing the Government for allegedly "sitting on" material information about a potential conflict, the Court was acknowledging that the Government had balanced the various ethical issues at play "ably and appropriately." (*Id.*)

In fact, as the Court pointed out in its March 16, 2022 hearing, and as Freifeld was begrudgingly forced to acknowledge, the *Curcio* proceedings were commenced because Cohen brought the potential conflict with Greenwald to the Court's attention. (*See* Hearing Tr. (Mar. 22, 2022) 37.)[6] Moreover, as previously discussed, the Government ultimately decided not to oppose Defendant's Petition, further demonstrating good faith on Cohen's part. (*See* Cohen Letter (Feb. 18, 2021).)

On the other hand, the record reflects that Freifeld seeks Cohen's recusal in a bad faith attempt to gain leverage and persuade the Government to offer Defendant a more favorable plea deal. At the March 26, 2021 conference, Freifeld described his motivation for bringing the Motion to Recuse in crystal clear terms:

> MR. FREIFELD: I believe that if I were able to bring a motion to recuse, to bring that leverage against the government, that we could possibly have a disposition here, if the Court would approve it, wrapping everything up, the 2255, as well as the—as well as the recusal, as well as the whole case. In one moment, poof, just like as was done in this case that I saw. . . . So I felt that I wasn't able to bring the leverage here today because I couldn't interpose that motion to possibly persuade

---

[6] Specifically, after repeatedly evading the question, Freifeld conceded:

THE COURT: How did we have the *Curcio* hearing to begin with[?]

MR. FREIFELD: Ms. Cohen brought the problem to the Court's attention that there might have been an actual conflict.

The Court: Right.

(*Id.* at 37 (italics added).)

16

>AUSA Cohen that we should do a deal here, and just wrap the whole thing so we don't have to worry about whether or not [Cohen] violated [her] duties to the Court at the time of the *Curcio* hearing.
>
>. . .
>
>THE COURT: Just so we're clear because I give you credit for not leaving anything to the imagination. If I threaten Ms. Cohen's professionalism, then maybe she'll give you the plea that she gave Greenwald. Right? Do I have that right?
>
>. . .
>
>MR. FREIFELD: It's much more nuanced.
>
>. . .
>
>THE COURT: Really? How is it more nuanced?
>
>MR. FRIEFELD: Because, you, know, in my experience, if a case has to go to a second AUSA, often that AUSA is a little less difficult to negotiate with, for example. So it's possible that AUSA Cohen fears that you might determine that she should be recused and that she—
>
>THE COURT: That's your leverage. That's your leverage.
>
>MR. FREIFELD: Yes.
>
>THE COURT: Yes. There's no nuance to this. There's no nuance to this whatsoever. This is incredible. I'm so glad there is a court reporter here to put this down.

(Hearing Tr. (May 26, 2021) 63–65.)

In short, Defendant's counsel has utterly failed to show *any* wrongdoing, impropriety, or bad faith on the part of Cohen. The court in *United States v. Helmsley*, 733 F. Supp. 600 (S.D.N.Y. 1989), denied the defendant's motion to disqualify the prosecution team in similar circumstances, where the prosecutor brought to the court's attention that the defendant's counsel might have a conflict of interest. *See id.* at 611. The court conducted a *Curcio* hearing, during which the defendant waived the conflict. *Id.* at 611–12. The defendant in *Helmsley* accused the prosecution of bad faith, arguing that the government raised the issue of the potential conflict in

17

an attempt to gain a tactical advantage. *Id.* The court stated that it "finds no basis for the defendant's allegation of bad faith on the part of the government. Indeed, the [c]ourt agreed with the government that it was necessary for the defendant to waive any past, as well as any future, conflicts, which the defendant freely did." *Id.* at 612. Similarly, here, the Court finds no basis for Defendant's allegation of bad faith on Cohen's part, and notes that Cohen was in fact demonstrating good faith by bringing the potential conflict with Greenwald to the Court's attention.

Thus, "[h]aving reviewed Defendant's motion, this Court finds no cause for recusal and . . . it finds that Defendant has not made even a threshold showing that recusal of the prosecutor[] in this case . . . is warranted. . . . Defendant's [M]otion is therefore denied." *United States v. Buczek*, No. 09-CR-121, 2010 WL 742195, at *1 (W.D.N.Y. Feb. 26, 2010); *see also United States v. Sharma*, No. 18-CR-340, 2019 WL 3802223, at *4 (S.D.N.Y. Aug. 13, 2019) ("The record contains no evidence of bad prosecutorial behavior. Disqualification is not warranted."); *United States v. Bolton*, No. 15-CR-158, 2019 WL 1929717, at *4 (W.D.N.Y. May 1, 2019) (denying motion to disqualify the prosecutor where the defendant "offers nothing more than his self-serving characterizations to support his claim"); *United States v. Nix*, 256 F. Supp. 3d 272, 281–82 (W.D.N.Y. 2017) ("[The defendant] identifies no legal authority that would support his position that the [g]overnment should be disqualified from this prosecution . . . [The defendant's] arguments in support of disqualification are wholly lacking in merit. . . . Accordingly, [the defendant's] motion to recuse the prosecution from his criminal case is denied.").

Thus, because the Court similarly finds no basis to recuse Cohen, Defendant's Motion to recuse is dismissed in its entirety.

18

### 3. Other Requests

Defendant also requests the Government's notes from its 2012–2013 investigation into Greenwald's conduct and further requests that the Government should be held in contempt for its failure to turn over those materials. (*See* Mot. to Recuse 1, 12–14.) The Government indicated in a January 15, 2021 letter to the Court that it planned to turn over the requested documents in advance of an April 14, 2021 evidentiary hearing, which the Court planned to conduct in connection with Defendant's Petition:

> The Government is in the process of reviewing its case files and plans to make available to the Court and counsel as 3500 material the documents the Government received from the Grievance Committee, almost all of which the Government previously provided to Mr. Freifeld, as well as the Government's contemporaneous summaries of its communications with Gary Greenwald, Robert Leader, and Bill Sayegh prior to the Government's January 17, 2013 letter to the Court concerning the possible conflict.

(Letter from Marcia S. Cohen, Esq. to Court (Jan. 15, 2021) (Dkt. No. 87); *see also* Gov't's Recusal Opp'n 2.) However, after the Government indicated on February 18, 2021 that it would no longer be opposing Defendant's Petition, (*see* Cohen Letter (Feb. 18, 2021)), the Court cancelled the evidentiary hearing and indicated that, during the time of the scheduled hearing, it would instead conduct an allocution to ensure that Defendant understood the consequences of his Petition being granted. (*See* Memo Endorsement (Feb. 19, 2021) (Dkt. No. 96).) Thus, the Government is correct that, at that point, it was no longer required to produce the materials. (*See* Gov't's Recusal Opp'n 2–3.)[7]

---

[7] Freifeld further argues that the requested materials will somehow support his contention that Cohen made false statements to the Court about the nature of her plea negotiations with Greenwald, which, according to Freifeld, will warrant Cohen's recusal. (*See* Mot. for Recusal 13–14.) This argument is not only nonsensical, but it is also utterly lacking in basis or support, and it is therefore rejected.

19

In any event, given that the Court has now granted the Petition, these requests are both denied as moot.

### III. Conclusion

For the reasons discussed above, the Court grants the Petition as unopposed. Defendant's guilty plea, conviction, and sentence are therefore vacated. The Court denies Defendant's Motion to Recuse in its entirety. The Clerk of Court is respectfully directed to terminate the pending Petition and Motion, (Dkt Nos. 62, 107). The Court will hold a status conference on October 18, 2022, at 2:30 pm.

SO ORDERED.

DATED:   September 13, 2022
             White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE